1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    JAMES HUNTER,                           Case No. 23-cv-02974-JSC
8                    Plaintiff,
9           v.                              **ORDER DENYING JOINDER OF NON-DIVERSE DEFENDANT AND DENYING MOTION TO DISMISS**
10   ASRC FEDERAL DATA SOLUTIONS,
     LLC, et al.,                            Re: Dkt. No: 29
11                  Defendants.
12
13          James Hunter brings state law claims against his former employer, ASRC Federal Data
14   Solutions, LLC, arising from the termination of his employment.  The Court previously determined it
15   had diversity subject matter jurisdiction and dismissed the complaint with leave to amend based on the
16   federal enclave doctrine. (Dkt. No. 24.)  Hunter's amended complaint attempts to add a non-diverse
17   defendant, his former supervisor Raymond Torres.  (Dkt. No. 29.)  ASRC moves to dismiss all
18   claims.  (Dkt. No. 35.)  After carefully considering the parties' submissions, and having the
19   benefit of oral argument on December 21, 2023, the Court DENIES Hunter's attempt to add
20   Torres as a defendant and DENIES ASRC's motion to dismiss.  The claims against Torres fail as a
21   matter of law, so adding Torres would be futile and would destroy diversity jurisdiction.  But the
22   amended complaint does not establish as a matter of law that Hunter's state law claims against ASRC
23   fall within the federal enclave doctrine, so Hunter's claims against ASRC survive.

                          **AMENDED COMPLAINT ALLEGATIONS**

25          In 2018, ASRC employed Hunter as a Senior Software Engineer in a position "located at
26   Moffett Federal Airfield, Mountain View, California."  (Dkt. No. 29 ¶ 13.)[1]  Hunter maintained
27   _____
28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

and enhanced software for "the Research and Development team which primarily worked offsite away from Moffett Federal Airfield." (*Id.* ¶ 14.)  So, Hunter worked remotely and was "required to be physically present at Moffett Federal Airfield only one day per week – generally Tuesdays for team meetings." (*Id.*)  Additionally, because of a government shutdown "[b]etween December 22, 2018 and January 25, 2019, Plaintiff worked exclusively outside of Moffett Federal Airfield[.]" (*Id.* ¶ 15.)  Further, in March 2020, remote work was made mandatory for all ASRC's employees.  (*Id.* ¶ 17.)  All meetings were conducted electronically and "[a]t no time during this period did Plaintiff work onsite at Moffett Federal Airfield." (*Id.*)  The amended complaint does not allege when, if ever, the remote work mandate ended.

Shortly after starting work at ASRC, Hunter met the lead developer on his team, Raymond Torres.  (*Id.* ¶ 19.)  During their meeting, Torres stated "Plaintiff was hired because of" Torres and that Torres "wanted to hire Plaintiff without having to go through coding exercises during the interview, as they had done with another new hire who had started the previous month." (*Id.*)  "Plaintiff understood [] Torres to be saying that Plaintiff's hire was solely due to him, and that Plaintiff should therefore be beholden to [] Torres alone." (*Id.*)

"[I]n early 2019, [] Torres stood very close to Plaintiff while he was seated at his desk and hovered over Plaintiffs' [sic] shoulder without maintaining a respectful distance[,]" (*Id.* ¶ 20), which made Plaintiff uncomfortable.  (*Id.*)  On another occasion, during a software team meeting, "Torres walked behind Plaintiff and placed his hand on Plaintiff's shoulder and squeezed the trapezius area in a massaging motion." (*Id.* ¶ 21.)  "Plaintiff felt violated[,]" and subsequently "avoided sitting next to [] Torres." (*Id.*)  But "Torres had a habit of coming in late and made it a point to sit next to Plaintiff and on several occasions, Plaintiff observed [] Torres gazing at crotch area." (*Id.*)  The Amended Complaint does not specify where these events occurred.

Hunter reported Torres's conduct to his supervisor, Saleem Qadir, in November of 2019, via an electronic medium.  (*Id.* ¶ 22.)  "Qadir stated that the incidents needed to be reported and stated that he would contact Human Resources and follow up.  Plaintiff relied on his supervisor's statement." (*Id.*)  After making his report, Hunter heard nothing for several months and finally followed up on his own with Qadir in May 202 via Microsoft Teams.  (*Id.* ¶¶ 23, 25.)  Hunter

1  alleges Qadir was at his home during the meeting.  (*Id.* ¶ 25.)  During their follow-up, Qadir

2  informed Hunter he did not discuss Plaintiff's complaints with Torres for fear of "retribution."

3  (*Id.* ¶ 23.)  Qadir also suggested Plaintiff contact Hilary Lansdon, ASRC's Human Resources

4  Representative.  (*Id.*)

5  Plaintiff contacted Lansdon and had discussions with her in May and June of 2020.  (*Id.* ¶

6  24.)  These conversations occurred remotely, and Hunter believes Lansdon was at her home during

7  the conversations.  (*Id.*)  At the conclusion of these meetings, "Lansdon stated she would

8  investigate Plaintiff's complaints and follow up with Plaintiff."  (*Id.* ¶ 26.)  Following up, Lansdon

9  and ASRC's Human Resource Director, Ashley Grau, met with Hunter and told him "nothing

10  could be done regarding Plaintiff's complaints."  (*Id.*)

11  A few months later, around December 2020, Hunter was told "his position was

12  eliminated[,]" (*id.* ¶ 27), and his employment was terminated.  (*Id.* ¶¶ 27, 63.)  Hunter was 61

13  years old at the time.  (*Id.* ¶ 27.)

**PROCEDURAL BACKGROUND**

15  After Hunter initiated this lawsuit in state court, ASRC—the only named Defendant at that

16  time—removed the case to federal court based on diversity jurisdiction and federal enclave

17  jurisdiction.  (Dkt. No. 1.)  ASRC then moved to dismiss Hunter's state law claims as barred by

18  the federal enclave doctrine.  (Dkt. No. 12.)  The Court granted ASRC's motion to dismiss

19  because Moffett Field is a federal enclave, and the only plausible interpretation of the facts then

20  alleged was Hunter worked on Moffett.  (Dkt. No. 24.)  Hunter then filed an amended complaint,

21  adding Torres as a defendant to all claims and adding a sixth claim for battery specific to Torres.

22  (Dkt. No. 29.)

23  In total, Hunter brings six claims for relief: (1) Retaliation in violation of Cal. Gov. Code §

24  12940 *et seq.*; (2) Retaliation and Wrongful Termination in violation of Cal. Labor Code § 1102.5

25  –Whistleblower Protection Act; (3) Wrongful Termination in violation of Cal. Gov. Code § 12940

26  *et seq.*; (4) Wrongful Termination in violation of public policy; (5) Age Discrimination in

United States District Court
Northern District of California

3

1    violation of Cal. Gov. Code § 12940 *et seq.*; and (6) Battery.[2]  (*Id.*)  The first five claims are

2    brought against all defendants, and the sixth claim for battery is brought against Torres only.  (*Id.*)

3                                   **DISCUSSION**

4    **I.    Jurisdiction**

5            As an initial matter, Hunter urges the Court reconsider jurisdiction and remand the case to

6    state court.  When ASRC removed this case, the parties were completely diverse and met the

7    required amount in controversy to establish diversity jurisdiction.  (Dkt. No. 24 at 2.)  In the

8    amended complaint, however, Hunter adds Torres, who, like Hunter, works in California;

9    therefore, Hunter asserts there is no longer diversity jurisdiction.  ( Dkt. No. 37 at 19 (claiming

10    diversity is destroyed because Torres is "an individual, employed in the city of Mountain View,

11    County of Santa Clara, State of California.").)

12            Hunter did not have the right to unilaterally add Torres, a non-diverse defendant, to this

13    lawsuit.  *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional

14    defendants whose joinder would destroy subject matter jurisdiction, the court may deny

15    joinder[.]").  In deciding whether to permit joinder of non-diverse defendants under 28 U.S.C. §

16    1447(e), courts often consider six factors:

17                    (1) whether the party sought to be joined is needed for just
                    adjudication and would be joined under Federal Rule of Civil
18                    Procedure 19(a);
                    (2) whether the statute of limitations would preclude an original
19                    action against the new defendants in state court;
                    (3) whether there has been unexplained delay in requesting joinder;
20                    (4) whether joinder is intended solely to defeat federal jurisdiction;
                    (5) whether the claims against the new defendant appear valid; and
21                    (6) whether denial of joinder will prejudice the plaintiff.

22     *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008,

23    1011 (N.D. Cal. 2000) (citing *Palestini v. Gen. Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal.

24    2000)); *see also Murphy v. American General Life Ins. Co.*, 74 F. Supp. 3d 1267, 1278-86 (C.D.

25    Cal. 2015) (analyzing the six factors in *IBC*); *Garcia v. Welltower OpCo Group, LLC*, No. 8:20-

26

27    _____

28    [2] Hunter's claim is titled "Negligence/Battery[,]" (Dkt. No. 29 at 15), but the pleadings do not
     state a cause of action for negligence, nor does Hunter's opposition defend a negligence claim.
     Accordingly, this Order assumes Hunter's sixth claim is only for battery.

United States District Court
Northern District of California

CV-02250 JVS-KESx, 2023 WL 2612605, at *6 (C.D. Cal. Mar. 23, 2023) ("Absent binding authority from the Ninth Circuit clarifying the standard to be applied under section 1447(e), the [c]ourt balances" the *IBC* "factors."). "Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder." *Graunstadt v. USS-Posco Indus.*, No. C 10-03225-SI, 2010 WL 3910145, at *2 (N.D. Cal. Oct. 5, 2010).

### A. Torres is Not Needed for a Just Adjudication

None of Hunter's claims against Torres would survive a motion to dismiss, so Torres is not necessary for a just adjudication. The battery claim is time-barred, and the remaining claims cannot be brought against a nonemployer such as Torres.

State law claims for personal injury, including battery, must be brought within two years. Cal. Code Civ. Proc. § 335.1. Hunter does not dispute the two-year statute of limitations applies to his battery claim but urges the Court to apply the relation back doctrine. Federal Rule of Civil Procedure 15(c) provides "[a]n amendment to a pleading" can "relate[] back to the date of the original pleading," so that the date of the original pleading, rather than the date of the amendment, controls for statute of limitations purposes in certain circumstances. Fed. R. Civ. Pro. 15(b).

The Court need not determine whether the relation back doctrine applies to this case, because even assuming the relation back doctrine applies, Hunter's battery claim remains outside the two-year statute of limitations requirement. Hunter alleges he was fired "on or about December 2020[,]" (Dkt. No. 29 ¶ 63). Hunter filed his first complaint in state court over two years after the end of his employment, on March 3, 2023. (Dkt. No. 4 at 6.) So, even assuming the statute of limitations began running when Hunter's employment was terminated (and not when the battery was committed), the statute of limitations expired, at the latest, on December 31, 2022, two months before Hunter filed suit. Hunter does not suggest any other reason for tolling the statute of limitations. So, Hunter's proposed battery claim against Torres is time-barred on the face of the amended complaint.

Hunter also attempts to bring employment claims against Torres, including: (1) Retaliation in violation of Cal. Gov. Code § 12940 *et seq.*; (2) Retaliation and Wrongful Termination in violation of Cal. Labor Code § 1102.5 –Whistleblower Protection Act; (3) Wrongful Termination

1    in violation of Cal. Gov. Code § 12940 *et seq*.; (4) Wrongful Termination in violation of public

2    policy; (5) Age Discrimination in violation of Cal. Gov. Code § 12940 *et seq.*

3         The first, third, and fifth causes of action against Torres, alleging retaliation, wrongful

4    termination, and discrimination under the California Fair Employment and Housing Act

5    ("FEHA"), Cal. Gov. Code § 12940 *et seq.*, are all facially invalid because, under California law,

6    individual supervisors cannot be held liable for such FEHA violations.  *See Reno v. Baird*, 18 Cal.

7    4th 640, 643 (1998) ("We conclude that the FEHA, like similar federal statutes, allows persons to

8    sue and hold liable their employers, but not individuals."); *Raines v. U.S. Healthworks Medical*

9    *Group*, 15 Cal. 5th 268, 277 (2023) ("[S]upervisorial employees are not liable under the FEHA for

10   their retaliatory acts." (citing *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1162 (2008)

11   and *Reno*, 18 Cal. 4th at 658)).  Hunter responds that "under FEHA, individual employees are

12   personally liable for harassment." (Dkt. No. 37 at 18.).  Maybe so, but Hunter does not bring a

13   harassment claim.

14        The second and fourth causes against Torres fail for the same reason.  *See United States ex*

15   *rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017) (finding

16   "no individual liability under section 1102.5"); *Miklosy v. Regents of Univ. of California*, 44 Cal.

17   4th 876, 900 (2008) ("An individual who is not an employer cannot commit the tort of wrongful

18   discharge in violation of public policy[.]").

19        Since all of Hunter's claims against Torres fail on the face of the amended complaint,

20   Torres is not needed for a just adjudication.

21                       **B.  The Remaining Factors Do Not Support Amendment**

22        While the statute of limitations precludes any battery action against Torres in state court,

23   the statute of limitations already precludes the action from proceeding in this Court, so this factor

24   is irrelevant to the joinder analysis.  Hunter has also not explained any reason for his delay in

25   requesting joinder.  Moreover, denial of joinder will not prejudice Hunter since he has not

26   articulated a facially valid claim against Torres.  Finally, some courts "consider the motive of a

27   plaintiff in joining a non-diverse party with 'particular care' when 'the presence of a new

28   defendant will defeat the court's diversity jurisdiction and will require a remand to the state

United States District Court
Northern District of California

6

1   court.'" *Murphy*, 74 F. Supp. 3d at 1285 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623

2   F.2d 1371, 1376 (9th Cir. 1980)).  Since all the other factors weight against allowing joinder of

3   Torres, the Court declines to consider motive.

4        So, in its discretion, the Court declines to allow Plaintiff's to add Torres as a defendant.

5   Accordingly, the Court has subject-matter jurisdiction because the parties are diverse.  (Dkt. No.

6   24 at 2.)

7   **II.     MOTION TO DISMISS**

8        ASRC moves to dismiss on the grounds all of Hunter's claims are barred by the federal

9   enclave doctrine.  In the alternative, it moves to dismiss the whistleblower claim as insufficiently

10  pled.

11       **A.  Federal Enclave Doctrine**

12       "Federal courts have federal question jurisdiction over tort claims that arise on 'federal

13  enclaves.'"  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28

14  U.S.C. § 1331).  Unless repudiated by Congress, the laws applicable to a federal enclave include

15  (1) federal law and (2) state laws that were in effect at the time of cession and are not inconsistent

16  with federal law. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1889-90 (2019)

17  (citing *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940)). ASRC maintains all of

18  Hunter's claims arose from conduct that occurred on Moffett Field, which is a federal enclave.  It

19  insists the claims are therefore barred because they are premised on state laws that postdate the

20  establishment of Moffett as a federal enclave.

21       In determining whether a particular tort claim "arose on" a federal enclave, courts consider

22  whether the "tort claims arose from actions and injuries that occurred on federal enclaves."  *Cnty.*

23  *of San Mateo v. Chevron Corp.,* 32 F.4th 733, 750 (9th Cir. 2022), *cert. denied sub nom. Chevron*

24  *Corp. v. San Mateo Cnty., California*, 143 S. Ct. 1797 (2023).  If the claim is "too attenuated and

25  remote" from the federal enclave, then the federal enclave does not bar state law claims.  *Id.* at

26  750-51.  Indeed, the parties agree that in determining whether federal enclave jurisdiction applies

27  to this case, the Court should look to where "pertinent events" related to each claim occurred.

28  (Dkt. Nos. 37 at 19; 38 at 10.)

United States District Court
Northern District of California

### 1.      Pertinent Events of All Employment Based Claims

Hunter alleges "Defendant[] violated FEHA by, inter alia, retaliating against Plaintiff for having engaged in protected activity and particularly because Plaintiff made complaints about his co-worker." (Dkt. No. 29 ¶ 30.)  Hunter reported Torres' conduct to three ASRC employees: (1) Qadir, (2) Lansdon, and (3) Grau.  (*Id.* ¶¶ 22-28.)  Drawing all reasonable inferences in Hunter's favor, *see Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), ASRC has not established any events pertinent to Torres's employment-based claims occurred on the federal enclave.

First, Hunter claims he reported Torres's conduct to Qadir "electronically" in November of 2019.  (Dkt. No. 29 ¶ 22.)  The amended complaint does not state where the parties were during this meeting, but company policy was for research and development team members to work remotely.  (*Id.* ¶ 14.)  Moreover, Qadir was the research and development team leader, so it is plausible when Hunter made the report to Qadir, Qadir was working remotely and not on the federal enclave.  (*See id.* ¶ 19.)  An electronic medium also supports an inference that the meeting's participants were not physically on the federal enclave at the time of the meeting. Further, Hunter followed up regarding his reports with Qadir in May of 2020 when all employees were working remotely.  (*Id.* ¶¶ 17, 25.)  Hunter specifically alleges Qadir was at home during this follow-up meeting.  (*Id.* ¶ 25.)  So, drawing inferences in Hunter's favor, the amended complaint plausibly supports the inference Hunter and Qadir were not working on the federal enclave at the time he reported the incident to Qadir.

Second, Hunter reported his concerns to Lansdon in May and June of 2020.  (*Id.* ¶ 24.)  At this time, all ASRC employees worked remotely.  (*Id.* ¶ 17.)  So, again, the amended complaint supports a plausible inference Hunter's conversations with Lansdon occurred off the federal enclave.

Third, Hunter reported his concerns to Grau, the head of Human Resources, because she attended a "remote electronic follow-up meeting with Ms. Lansdon[.]"  (*Id.* ¶ 26.)  Although the exact timing is unclear, Hunter alleges this meeting occurred after March 2020 when remote work

1   was mandatory for all employees, so it can be plausibly inferred all parties were at home.  (*Id.* at ¶

2   17.)  Accordingly, Hunter plausibly alleges the reporting to Grau occurred off the federal enclave.

3        The alleged retaliatory action was firing Hunter "on or about December 2020[.]"  (*Id.* ¶

4   63.)  Although not explicitly pled, it is reasonable to infer the firing occurred off the enclave

5   because it occurred after March 2020, when all ASRC employees began working remotely.  (*Id.* ¶

6   17.)

7        ASRC insists the location of the alleged harassment is pertinent because it "provide[s] the

8   entire factual predicate for Plaintiff's claims."  (Dkt. No. 38 at 7.)  But whether federal enclave

9   jurisdiction bars state law claims requires analyzing the location of *pertinent* facts, and Torres's

10  alleged battery is not pertinent to his FEHA retaliation claim.  A FEHA retaliation claim does not

11  depend upon the correctness or basis for the conduct for which a defendant retaliated.  Rather,

12  "[t]o establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected

13  activity, that she was thereafter subjected to adverse employment action by her employer, and

14  there was a causal link between the two."  *Kourounian v. California Dep't of Tax & Fee Admin.*,

15  91 Cal. App. 5th 1100, 1113, *review denied* (Aug. 30, 2023)."  So, the plaintiff is not required to

16  prove the conduct about which the plaintiff complained actually occurred.  *See id.* at 1113-14

17  ("Because retaliation under FEHA requires the plaintiff to show that the employer was motivated

18  to retaliate by the plaintiff's protected activity, actions the employer took before the plaintiff

19  engaged in the protected activity necessarily are irrelevant.").  Accordingly, the conduct

20  underlying the report is not pertinent for purposes of the federal enclave doctrine.  But even if it

21  were pertinent, ASRC has not established this one pertinent fact arising on a federal enclave--

22  when all the other pertinent facts arose elsewhere—establishes the federal enclave doctrine bars

23  the claim as a matter of law.

24        In sum, drawing all reasonable inferences in Hunter's favor, the events pertinent to the

25  FEHA retaliation claim occurred off the federal enclave.  So, ASRC has not shown the federal

26  enclave doctrine bars Hunter's retaliation claim.  For the same reasons, the pertinent events giving

27  rise to the FEHA wrongful termination claim, the claim for wrongful termination in violation of

28  public policy, and the FEHA age discrimination claim all occurred off the federal enclave.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

Unlike the above claims, the factual basis of Hunter's report to his supervisors is pertinent to his retaliation and wrongful termination claim under the California Whistleblower Protection Act, Cal. Lab. Code § 1102.5, because a reporting individual must "reasonably believe the information discloses unlawful activity." *Ross v. Cnty. of Riverside*, 36 Cal. App. 5th 580, 593 (2019); *see also* Cal. Lab. Code § 1102.5(b). So, the underlying battery about which Hunter complained is pertinent to the second cause of action. But, as noted above, ASRC has not cited any caselaw suggesting a single pertinent event occurring on the federal enclave, when all other pertinent events occurred elsewhere, is enough to establish the federal enclave doctrine bars this claim at the motion to dismiss stage.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The cases ASRC relies upon are unpersuasive as all involve several pertinent events occurring on the enclave. *See Jimenez v. Haxton Masonry, Inc.*, No. 18-CV-07109-SVK, 2020 WL 3035797, at *4 (N.D. Cal. June 5, 2020) (finding federal enclave doctrine barred state law claims because "Plaintiff's claims for unpaid travel time and wages stem from his travel to and from federal enclave jobsites," since "[d]riving was not Plaintiff's job—it was merely a means of getting to Plaintiff's actual jobsite," which was on a federal enclave and travel time "is merely a preliminary or postliminary activity that is parasitic to the actual work" on the enclave); *Kerr v. Delaware N. Companies, Inc.*, No. 1:16-CV-01797-LJO-SAB, 2017 WL 880409, at *5 (E.D. Cal. Mar. 6, 2017) (finding federal enclave doctrine applied when the plaintiff's "complaint unambiguously pled facts which support federal enclave jurisdiction" because all relevant allegations occurred on the federal enclave). And in *Bisconte v. Sandia National Laboratories*, the Tenth Circuit found the "alleged acts of misconduct occurred on a federal enclave because they involved actions taken, decisions made, and policies developed by [the defendant]'s managers and executives who worked on the" federal enclave. No. 21-2133, 2022 WL 3910509, at *3 (10th Cir. Aug. 31, 2022), *cert. denied*, 143 S. Ct. 783 (2023). Here, as explained above, the amended complaint plausibly alleges the actions taken and decisions made by ASRC's managers and executives occurred off the federal enclave while all ASRC personnel, including Hunter, were working off the enclave. *See Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1459-60 (2009)

28

1    (explaining a plaintiff's place of employment is "the significant factor in determining where the

2    plaintiff's employment claims arose under the federal enclave doctrine").

3        So, at this pleading stage, ASRC has not established the federal enclave doctrine bars

4    Hunter's state law claims.

5        **B.    Whether the Whistleblower Claim Is Properly Pled**

6        Defendant also contends the second cause of action, for retaliation and wrongful

7    termination in violation of California Labor Code § 1102.5, is improperly pled because it fails to

8    allege any underlying protected conduct.

9        "To prove a cause of action under section 1102.5, the plaintiff must establish a prima facie

10   case of retaliation." *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (2012) (citations

11   omitted).  "To establish a prima facie case for whistleblower liability, a plaintiff must show that he

12   or she was subjected to adverse employment action after engaging in protected activity and that

13   there was a causal connection between the two." *Id.* (quotations and citations omitted).

14       Protected activity includes "disclosing information . . . to a person with authority over the

15   employee or another employee who has the authority to investigate, discover, or correct the

16   violation or noncompliance[.]"  Cal. Lab. Code § 1102.5(b); *see also Edgerly*, 211 Cal. App. 4th at

17   1199 ("Protected activity is the disclosure of or opposition to a violation of state or federal statute

18   or a violation or noncompliance with a state or federal rule or regulation." (cleaned up)).  While

19   the reporting individual must "reasonably believe the information discloses unlawful activity."

20   *Ross*, 36 Cal. App. 5th at 593, this does not require disclosing a specific state or federal law the

21   employee believes is being violated.  *Id.*

22       The amended complaint alleges Hunter's complaints to ASRC about Torres's "improper

23   and unprofessional conduct" are the required protected activity.  (Dkt. No. 29 ¶ 40.)  ASRC insists

24   "improper" and "unprofessional" conduct is not illegal, and thus Hunter did not engage in

25   protected activity when he complained about Torres' conduct.  (*See id.* (describing Torres's

26   conduct as "improper" and "unprofessional").  While the amended complaint uses these adjectives

27   to describe the alleged touching, the allegations as to the subsequent leering at Hunter's crotch

28   areas plausibly qualifies as harassment in violation of state law.  *See* Cal. Gov't Code §

United States District Court
Northern District of California

11

12923(b)("A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment."); *Birschtein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 996–97 (2001) (holding "staring at a fellow employee" can, in some circumstances, "constitute actionable sexual harassment under the California Fair Employment and Housing Act.").   Moreover, illegal acts and unprofessional or improper ones are not mutually exclusive.  So, drawing all inferences in Hunter's favor, the amended complaint plausibly pleads Hunter believed he was reporting a violation of law as required by California Labor Code § 1102.5(b).

Accordingly, ASRC's motion to dismiss the Whistleblower Act claim is denied.

## CONCLUSION

For the reasons stated above, the Court DENIES Hunter's attempt to add Raymond Torres as a defendant and DENIES the motion to dismiss.

The Court will hold an Initial Case Management Conference on January 17, 2024, at 1:30 p.m. by Zoom webinar. A joint case management conference statement is due by January 10, 2024.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 29.

Dated: January 5, 2024

JACQUELINE SCOTT CORLEY
United States District Judge